IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00492-PAB-CBS

DONITA L. SELF,

     Plaintiff,

v.

I HAVE A DREAM FOUNDATION–COLORADO

     Defendant.

## ORDER

     This matter is before the Court on Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 95] filed on February 4, 2013. The magistrate judge recommends that the Court grant Defendant's Motion to Dismiss and/or for Summary Judgment [Docket No. 86] and enter summary judgment in favor of defendant on plaintiff Donita L. Self's second amended complaint [Docket No. 34]. On February 11, 2013, Ms. Self filed timely objections [Docket No. 96] to the Recommendation. On February 25, 2013, defendant filed a response [Docket No. 97] to plaintiff's objections.

     In light of Ms. Self's pro se status, the Court construes her filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991). However, the Court may not act as a pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). To be sufficiently specific, an objection must "enable[ ] the district judge to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute." *See id*. (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

Ms. Self alleges that defendant I Have a Dream Foundation–Colorado ("CIHAD") discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Underlying facts are set forth in the Recommendation and will not be restated here. The magistrate judge based his recommendation that the Court grant summary judgment on two grounds: (1) that Ms. Self failed to exhaust her administrative remedies, and (2) that Ms. Self failed to prove that CIHAD had more than 15 employees during the relevant time period as required by the ADA. *See* 42 U.S.C. § 12111(5)(A) ("The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year"). Ms. Self objects to both of these grounds. Although Ms. Self understandably would like the Court to review the documentation she has submitted regarding the merits of her claims, the Court agrees with the magistrate judge that these two threshold issues are dispositive.

With respect to her EEOC claim, Ms. Self contends that it was timely filed and that it properly alleged retaliation. Docket No. 96 at 15 ("Ms. Self was not instructed to check any boxes but only to sign it. . . . Ms. Self had the understanding from what [the EEOC investigator] said that the actual act of Ms. Hanewall terminating Ms. Self was considered retaliation in addition to Ms. Hanewall's increasing malicious behavior towards her."). Ms. Self's assertions misapprehend the basis of the magistrate judge's conclusion. The fact that Ms. Self did not check the box marked "Retaliation" on her EEOC charge is not dispositive. Docket No. 95 at 14-15. Rather, the Recommendation correctly concludes that the language of Ms. Self's charge does not encompass a retaliation claim. Docket No. 95 at 15; *see also* Docket No. 86-7.

"Retaliation" under the ADA refers to the practice of "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Ms. Self's EEOC charge states:

> I was hired on or about November 29, 2000, as the Office Manager. I performed my duties in a satisfactory manner. In approximately July 2009, I was diagnosed with my disability. I disclosed my disability to the Executive Director. I was able to perform the essential functions of my position. I did need assistance when I had to lift or carry a large or heavy item and did the office grocery shopping. This upset the Executive Director and she started to treat me in a rude and unprofessional manner. On or about October 13, 2008, I learned that I had been 'locked' out of the company database. This upset me, so I left work. I tried to call back to my office phone to pick up messages but I was not able to retrieve and/or access my phone and/or messages. On or about October 14, 2008, I called in sick to work. Later that afternoon I found a letter in my door indicating that I had been discharged from my position on October 13, 2008. There was also a Release included that reflected if I signed it the company would pay my health insurance for the next six months. I did not sign the release form. The Executive Director

> called my cell phone several times and left messages inquiring if I had signed the Release. When I did not call her back she called me and left a message stating that she was going to stop payment on my vacation pay out if I didn't call her back. I did not call her and eventually deposited the check. ~~To date I have not been allowed to come and pick up my personal belongings~~ [sic].
>
> I believe that I have been discriminated against due to my disability within the meaning of the Americans with Disabilities Act of 1990, as amended.

Docket No. 86-7. The EEOC charge does not state that Ms. Self engaged in protected opposition to age discrimination and thus does not allege retaliation under the ADA. *See* 42 U.S.C. § 12203(a). As explained in the Recommendation, there is no need for the Court to reach the issue of whether the charge was timely filed. Docket No. 95 at 16 ("CIHAD is entitled to summary judgment on the claims in the [second amended complaint] and the court need not reach at this time CIHAD's additional arguments that Ms. Self did not timely file her Charge of Discrimination with the EEOC"). Ms. Self's first objection to the Recommendation is thus unavailing.

Ms. Self's second objection regards her contention that CIHAD had more than 15 employees during the relevant time period. Ms. Self asserts that the individuals that Ms. Hanewall identifies as AmeriCorps volunteers, *see* Docket No 86-1 at 2, ¶ 3, were not legitimately enrolled in AmeriCorps because they were not students. Docket No. 96 at 19-22, 29 ("because Ms. Schooley enrolled CIHAD employees that were not actually students in the program she has violated the provision [sic] of law, regulations, contract, grant cooperative agreement, and other agreement or document governing the expenditure of funds."). In support of this assertion, Ms. Self offers (1) a photocopy purported to be the first page of CIHAD's 2008 IRS Form 990, "Return of Organization Exempt from Income Tax;" (2) a photocopy purported to be a page from the national I

4

Have a Dream Foundation's 2000 IRS Form 990; (3) a photocopy purported to be CIHAD's payroll records from January and October 2008; (4) citations from the statutes and regulations governing the AmeriCorps program; (5) an excerpt from an AmeriCorps audit conducted in 2008; and (6) three staff biographies from CIHAD's website. Docket No. 96 at 16-29. Even assuming that these documents are properly authenticated, they do not raise a genuine dispute of material fact regarding the number of CIHAD employees during the relevant time period.

As an initial matter, Ms. Self did not file the IRS Form 990 excerpts as exhibits to her response to defendant's motion for summary judgment. *See generally*, Docket No. 89 at 60-93 and Docket No. 90. Federal Rule of Civil Procedure 72(b)(3) provides that the district judge "may"–but is not required to–receive new evidence when resolving objections to a magistrate judge's recommendation. A number of courts have held that the language of the rule places this decision within the district court's discretion. *See Clark v. United States*, 360 F. App'x 660, 663 (7th Cir. 2009) ("The district court, in adopting the magistrate judge's report and recommendation, did not abuse its discretion by refusing to consider the late-submitted affidavit and indulge [plaintiff's] belated attempt to change his story."); *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 33 (1st Cir. 2008) ("Under 28 U.S.C. § 636(b), a district court reviewing a magistrate judge's report and recommendation has discretion whether to receive further evidence."); *Gonzales v. Qwest Commc'ns Corp.*, 160 F. App'x 688, 690 (10th Cir. 2005) ("The decision whether to accept further evidence after the magistrate judge's recommendation is therefore within the district court judge's discretion."); *Doe v. Chao*,

306 F.3d 170, 183, n.9 (4th Cir. 2002) ("Without adequate justification for the failure to present the evidence in question earlier, a district court may ignore belatedly tendered evidence offered in opposition to summary judgment after the court has ruled on a summary judgment motion."); *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1290, n.4 (11th Cir. 2002) ("In light of [plaintiff's] failure to present the evidence to the magistrate judge, it would not have been an abuse of discretion for the district court to decline to consider the evidence at all."). Ms. Self does not explain why she failed to introduce the tax forms in her response to the motion for summary judgment. As there is no indication that this evidence was not previously available to Ms. Self, or that she was previously unaware of its potential relevance to her claims, the Court will not consider it.[1] *See Doe*, 306 F.3d at 183, n.9.

Furthermore, as the magistrate judge explained, the photocopied payroll records are not probative of the number of CIHAD's employees because AmeriCorps participants are paid a living stipend by their placement organization. *See* Docket No. 95 at 11; 45 C.F.R. §§ 2522.240, 2522.245 (imposing restrictions on living allowances

---

[1] Moreover, this evidence does not appear to support plaintiff's argument. Plaintiff relies on the fact that the IRS Form 990 lists the total number of employees as 26. Docket No. 96 at 16. However, given that AmeriCorps members pay federal income taxes on their living stipend, *see* TAX IMPLICATIONS, *available at:* http://www.americorps.gov/for_individuals/benefits/benefits_ed_award_taxes.asp, counting them as employees on a federal tax form appears to be logical and there is no indication that it would implicate their status as employees under the ADA. *See Rodriguez v. Corp. for Nat'l & Cmty. Serv.*, 2009 U.S. Dist. LEXIS 67534, at *14 (W.D. Tex. June 23, 2009). Second, it appears that Ms. Self offers the excerpt of the national IHAD's IRS Form 990 to show that this form differed from CIHAD's records. Docket No. 96 at 17 ("When an organization has AmeriCorps members they would complete the 990 as National I Have a Dream Foundation, in [sic] New York did in 2000 who at that time had legitimate AmeriCorps"). As Ms. Self has not submitted an equivalent CIHAD form that could serve as a basis for comparison, this document is not relevant.

that programs may distribute to AmeriCorps volunteers). This stipend is not a wage and does not render them employees. *See id*.

Next, Ms. Self cites several of the statutes and regulations governing the AmeriCorps program. *See, e.g.*, Docket No. 96 at 27-28 (citing 45 C.F.R. § 2519.300, which states that "[s]tudents, faculty, administration and staff of an institution, as well as residents of the community may participate" in a Higher Education program). These citations set forth only the black-letter law on the AmeriCorps program and do not support Ms. Self's factual allegations regarding the nature of the grant funding that CIHAD was eligible for or that it received. As a result, they do not prove that CIHAD had more than 15 employees.

Likewise, the excerpt Ms. Self cites from the 2008 audit on Regis University by the Office of Inspector General for the Corporation for National and Community Service, Docket No. 96 at 28, does not support Ms. Self's assertions since there is nothing in the excerpt that implicates CIHAD, a fact that Ms. Self acknowledges. Docket No. 96 at 29 ("I do not know for certain that the auditor was identifying the AmeriCorps members specifically at CIHAD that Ms. Schooley fraudulently has claimed."). The excerpt states that the Inspector General has "questioned" certain expenses under Regis' grant, including administrative fees of $1,875 for ineligible members, but does not provide any information of relevance to this case. Docket No. 96 at 28.

Finally, Ms. Self offers three staff biographies from CIHAD's website. Docket No. 96 at 29-30. The first biography is of the new executive director. The second biography states that "Jonathan Kamm started with CIHAD in 2009 as an AmeriCorps Volunteer. In 2011 he took one of the first class assistant positions with the Helen M.

7

McLoraine Class of 2014." Docket No. 96 at 30. The third biography does not mention AmeriCorps but lists the individual's title as "Class Assistant." Ms. Self asserts that,

> [s]ince the Corporation for National and Community Service Office of Inspector General received a complaint through their hotline, CIHAD no longer claims to have AmeriCorps members. Below is a copy of the applicable staff off of their website which shows they have a new executive director and they no longer claim to have AmeriCorps members, calling them class assistants.

Docket No. 96 at 29. The titles that CIHAD gives to its current staff members has no bearing on Ms. Self's claim that CIHAD had more than 15 employees in 2008.

Ms. Self also asks that the Court review the entirety of her case de novo. Docket No. 96 at 2. As noted earlier, the Recommendation is based on two grounds, which have already been discussed and which are dispositive. Therefore, the merits of Ms. Self's case are not properly before the Court. Accordingly, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 95] is ACCEPTED. It is further

**ORDERED** that Defendant's Motion to Dismiss and/or for Summary Judgment [Docket No. 86] is GRANTED. It is further

**ORDERED** that this case is DISMISSED.

DATED February 27, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge